IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALLIED PIPE HOLDINGS, LLC, and ALLIED MANAGEMENT, INC. <br>       Plaintiffs <br><br> V. <br><br> EDWIN F. PAULSEN, <br>       Defendant | §§§§§§§§§ <br><br> CIVIL ACTION NO. 4:21-CV-01315 |

**EDWIN F. PAULSEN'S SUPPLEMENT TO
CONVERTED MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Edwin F. Paulsen ("***Mr. Paulsen***") and files this Supplement to his Rule 12(B)(6) Motion to Dismiss which the Court converted by Order [Doc. 17] to a motion for summary judgment. The legal grounds are the same as in Mr. Paulsen's motion to dismiss.

First, the claims in the Complaint filed by Allied Pipe Holdings, LLC and Allied Management, Inc. ("***Allied***") are barred by a settlement agreement between the parties which is referred to in Allied's Complaint and proven by the Declaration of Edwin Paulsen ["Paulsen Declaration"]. Second, the claims in Allied's Complaint are barred because the noncompetition clauses that Allied seeks to enforce against Mr. Paulsen are unenforceable as a matter of law. Third, Allied's Complaint fails to allege sufficient facts to support a cognizable legal claim.

      **I.**      **MOTION FOR SUMMARY JUDGMENT STANDARD**

1.    Pursuant to this Court's Order [Doc. 17], this motion will be reviewed under FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56(a) provides that a party is

entitled to summary judgment if the moving party "shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253,261 (5th Cir. 2007) (citing *Celotex Corp,* 477 U.S. at 322-25 (1986)).

2. Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex,* 477 U.S. at 321-25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

3. The facts asserted are supported by the Paulsen Declaration and exhibits to it attached and incorporated as Exhibit A.

## II. Settlement Agreement and Mutual Release Bars Allied's Claims

4. In January of 2021, Allied Paulsen Pipe, LLC (now called Allied Pipe Holdings, LLC) and Edwin F. Paulsen and Craig Geers entered into a Settlement

Agreement and Mutual Release (the "**Settlement Agreement**"). A true and correct copy of the Settlement Agreement is attached as Exhibit A-1 to the Paulsen Declaration. *See* Exhibit A

5. The Settlement Agreement grew out of of disputes between the parties under the August 28, 2019, purchase agreement wherein Mr. Paulsen and Craig Geers sold their interests in Paulsen Pipe, LLC to Allied Paulsen Pipe, LLC (the "**Purchase Agreement**"). A true and correct copy of the Purchase Agreement (*sans* Schedules and Exhibits) is attached as Exhibit A-2 to the Declaration. *See* Paulsen Declaration, Exhibit A-2. It is the same as Exhibit A-1 to the Complaint.

6. The Settlement Agreement provided in pertinent part:

**WHEREAS**, the Parties entered into a certain Purchase Agreement of Paulsen Pipe, LLC, effective August 28, 2019 (the "Purchase Agreement").

**WHEREAS**, disputes have arisen between the Parties as to aspects of the Purchase Agreement, specifically direct indemnity claims under Article XI, and the Purchase Price Retention Amount under Article II, of the Purchase Agreement (the "Disputes").

**WHEREAS,** the Parties, pursuant to the terms of this Settlement Agreement, have agreed to resolve and settle all claims and disputes, known or unknown, that the Parties may have concerning or relating **directly or indirectly to the Purchase Agreement and/or the Disputes**.

Exhibit A-1, p. 1. (emphasis added).

7. The Settlement Agreement expressly provided that by paying the settlement amount and signing the agreement, the parties finally settled and resolved any and all claims, demands, actions, suits and all sums of money or other relief whatsoever which had been asserted or which could have been asserted by the Parties against each other

**arising out of, or in any way relating to, the Purchase Agreement and/or the Disputes**. Exhibit A-1, p. 2, ¶ 1.3. (emphasis added). The specific language of the release states:

> In consideration hereof, **Allied, its** predecessors, successors, **parents, direct subsidiaries, indirect subsidiaries, affiliates**, assigns, agents, and attorneys hereby release and forever discharge Sellers and all of their respective predecessors, successors, assigns, agents, and attorneys from and against all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, demands and controversies whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency, commission or arbitration administrator, and whether now known or unknown, liquidated or unliquidated, that Allied now has or may have had, or thereafter claims to have, **regarding the issues arising out of or directly or indirectly related to the Purchase Agreement or the Disputes**, on behalf of itself, or any other person or entity, at any time prior to and including the date of this Agreement.

Exhibit A-1, p. 3, ¶ 3.2. (emphasis added).

8. For a settlement agreement to release a claim, the releasing document must "mention" it. *Victoria Bank and Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991) (holding that settlement of loan claim did not also settle a separate transaction and line of credit claim where settlement only referred to the initial loan); *see also Memorial Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434–35 (Tex. 1997) (holding that because the parties agreed that they would release all claims "relating to [Plaintiff's] relationship with [Defendant]" Plaintiff's claim for ETO exposure was released because it was related to his relationship with Defendant, and therefore was "mentioned" in the releasing document.). The mentioning does not require particularized enumeration or detailed description. *Stinnett v. Colorado Interstate Gas Co.*, 227 F.3d 247, 255 (5th Cir. 2000). A

release does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter. *Memorial Med. Center*, 943 S.W.2d at 435. That is, it is not necessary "for the parties to anticipate and identify every potential cause of action relating to the subject matter of the release." *Salama v. W. Wind Energy Corp.*, 4:12-CV-03535, 2013 WL 6079548, at *10 (S.D. Tex. Nov. 19, 2013), aff'd, 586 Fed. Appx. 183 (5th Cir. 2014)(holding that stock option grant was released by subsequent settlement agreement related to consulting services); *citing Baty v. ProTech Ins. Agency,* 63 S.W.3d 841, 848 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Keck, Mahin & Cate v. National Union Fire Ins. Co.,* 20 S.W.3d 692, 698 (Tex.2000)); *see also A2D Technologies Inc. v. MJ Sys., Inc.,* 269 F. App'x 537, 542 (5th Cir.2008).

9. Here, the Settlement Agreement expressly mentioned two matters to be released. First, the "Dispute" which was defined as a dispute "between the Parties as to aspects of the Purchase Agreement, specifically direct indemnity claims under Article XI, and the Purchase Price Retention Amount under Article II, of the Purchase Agreement." Second, and more importantly for our purposes, the Settlement Agreement expressly recited that its purpose was to settle all claims relating directly or indirectly to the "Purchase Agreement." It is the Purchase Agreement that Plaintiff bases its first count for breach of contract. Complaint, ¶ 35-38. The language of the release expressly released Paulsen from "**all actions**, causes of action, claims, suits, debts, damages, judgments, liabilities, demands and controversies whatsoever, whether matured or unmatured . . . that Allied now has or may have had, or thereafter claims to have, regarding the issues

**arising out of** or directly or indirectly related to **the Purchase Agreement** or the Disputes." Exhibit A-1, p. 3. (emphasis added).

10. The noncompetition clause is part of the Purchase Agreement, specifically section 2.4. The Settlement Agreement "expressly mentions" the Purchase Agreement and unambiguously released all claims "arising out of or in any way related to" the Purchase Agreement. *See* Paulsen Declaration, Exhibit A-2. Therefore, Plaintiffs' breach of the Purchase Agreement claim (count one) should be dismissed because Mr. Paulsen is entitled to judgment as a matter of law on the affirmative defense of release.

### III. The Noncompetition and Non-Solicitation Provisions are Unenforceable as a Matter of Law

11. Although the Settlement Agreement released the claims, the noncompetition provision in the Purchase Agreement is also unenforceable as a matter of law because it does not comply with the requirements of the Texas Noncompete Act. TEX. BUS. & COMM. CODE ANN. §§ 15.50 *et. seq.* Additionally, because non-solicitation agreements are subject to the same analysis as covenants not to compete, the Confidentiality and Non-Solicitation Agreement ("*NSA*") is also unenforceable as a matter of law. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 327 (Tex. 2014)("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act."). A true and correct copy of the NSA is attached to the Paulsen Declaration as Exhibit A-3. It is the same as Exhibit A-2 to the Complaint.

12. A covenant not to compete is "enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.50(a). As discussed *infra*, neither the noncompetition clause in the Purchase Agreement nor the non-solicitation clause in the NSA meet these statutory requirements.

13. Allied's breach of contract claims depend on violations of: (1) the noncompetition agreement in the Purchase Agreement; and (2) the non-solicitation clause in the NSA, each of which fail as a matter of law. There is no genuine issue as to any material fact, and Mr. Paulsen is entitled to judgment as a matter of law that Allied Pipe and Allied Management take nothing.

    a. **Breach of Contract—Purchase Agreement**

14. The Noncompetition provision in the Purchase Agreement fails as a matter of law because it does not contain any limitation as to geographical area and because the scope of activity to be restrained is not reasonable and imposes a greater restraint than is necessary to protect the goodwill or other business interest of Allied Pipe Holdings, LLC.

15. The Noncompetition provision provides:

(a) For a period of five (5) years following the Closing (or if any Seller enters into an employment relationship with Buyer or its Affiliates, from the date of termination of such employment), the Sellers will not, for his/its own account or jointly with another, directly or indirectly, for or on behalf of any individual, partnership, corporation or other legal entity, as principal, agent or otherwise:
    (i) Own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed as an officer,

> employer, consultant, independent contractor, stockholder, partner, or in any other capacity with any entity that is engaged in competition with the Business.

See Exhibit A-2, p. 6. The Purchase Agreement defines "Business" as the "carbon pipe distribution, cleaning systems and other services related to the carbon pipe industry conducted by [Paulsen Pipe, LLC]." See Exhibit A-2, p. 1. The Purchase Agreement defines "Affiliates" as "any present or former officer, member, manager or Affiliate of the Company or the Sellers, any present or former known spouse, ancestor or descendant of any of the aforementioned persons or any trust or other similar entity for the benefit of any of the foregoing persons." See Exhibit A-2, p. 18, ¶ 3.23. These far-ranging definitions push the Noncompetition provisions even farther beyond the boundaries of reasonableness. Allied judicially admits that it has international "affiliates" which purportedly manufacture and distribute. See Complaint, ¶10

16. The noncompetition provision contains no restriction as to geographical area. See Exhibit A-2, pp. 6-7. The "absence of a geographical restriction will generally render a covenant not to compete unreasonable." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018). The noncompetition provision restricts Mr. Paulsen from competing with "the Business" in Antarctica or anywhere else in the world. It is patently overbroad. Allied Pipe Holdings, LLC's claim for breach of the noncompetition provision in the Purchase Agreement fails because it is unenforceable as a matter of law.

17. The noncompetition provision also fails because by its very terms, the "scope of activity to be restrained" imposes a greater restraint than is necessary to protect

the goodwill or other business interest of Allied Pipe Holdings, LLC. If the scope of activity restrained is not limited, courts routinely hold covenants unenforceable *See, e.g., McNeilus Cos., Inc. v. Sams*, 971 S.W.2d 507, 510-11 (Tex. App. - Dallas 1997, no writ) (affirming trial court's ruling that "prohibiting [employee] from working *in any capacity* for a [Plaintiff employer's] competitor was a restraint too broad in scope"); *APRM, Inc. v. Hartnett*, 2002 WL 1435995, at *5 (Tex. App. - Houston [1st Dist.] July 3, 2002, no pet.) (holding prohibition on being "involved in any manner" with competitor of [Plaintiff employer] "overbroad and unreasonable" because it "is not limited to the capacity in which [employee] worked for [Plaintiff employer]"); *McKissock, LLC v. Martin*, 267 F.Supp.3d 841, 855-56 (W.D. Tex. 2016) (finding non-compete prohibiting former employee from being "employed or retrained by, participate in or be connected *in any manner* with any business or practice which is in competition with [former employer]" was "as currently written, unreasonable.").

18.     Here, the noncompetition clause contains a restriction that Paulsen will not "directly or indirectly…own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed as an officer, employer, consultant, independent contractor, stockholder, partner, or in **any other capacity** with **any entity** that is engaged in competition with the Business." *See* Exhibit A-2, §2.4(a)(i), p. 6 (emphasis added).

19.     When it comes to interpreting contracts, text is paramount. "Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763-64 (Tex. 2018). Courts

"presume parties intend what the words of their contract say" and interpret the contract "according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *Id.* at 764. Surrounding facts and circumstances may inform the meaning of an unambiguous contract's language, but such evidence cannot "make the language say what it unambiguously does not say." *Id.* at 769. Text is especially important in the context of restrictive covenants because the enforceability of a restrictive covenant turns on its text. Courts routinely find covenants facially overbroad after considering their text and hypothesizing about their scope. *See, e.g., Juliette Fowler Homes*, 793 S.W.2d at 663 (non-compete "as written is an unreasonable restraint"); *Diversified*, 752 S.W.2d at 11-12 (geographic limitation "oppressive on its face"); *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *5 (Tex. App. - Fort Worth Mar. 27, 2014, no pet.) (mem. op.) ("noncompete is unenforceable as written"); *Brown Servs., Inc. v. Brown*, No. 01-98-00304-CV, 1999 WL 681964, at *7 (Tex. App. - Houston [1st Dist.] Sept. 2, 1999, pet. denied) (mem. op.) (hypothesizing about scope of non-solicitation provision).

20. Under the plain language of the noncompete, Paulsen could not even sweep the floors of a competitor. *Sentinel Integrity Sols., Inc. v. Mistras Group, Inc.*, 414 S.W.3d 911, 926 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (noncompete that which purported to prevent former manager from even sweeping the floors at a competitor was unenforceable as a matter of law). Nor could Paulsen own a single share of stock in a competitor. *Forum US, Inc. v. Musselwhite*, 14-17-00708-CV, 2020 WL 4331442, at *8 (Tex. App.—Houston [14th Dist.] July 28, 2020, no pet.) (noncompete

which purported to prevent a former employee from owning even a single share of stock in a competitor or volunteering at a competitor's charity golf tournament is unenforceable as written).

21. The noncompetition provision in the Purchase Agreement is unenforceable as a matter of law because: (1) it has no geographic limitation; and (2) it purports to restrict Paulsen from directly or indirectly working in <u>any capacity</u> with <u>any entity</u> engaged in competition. Because this provision is unenforceable as a matter of law, there is no genuine issue as to any material fact and Mr. Paulsen is entitled to judgment as a matter of law that Allied Pipe Holdings, LLC take nothing on its breach of contract claim.

### b. Breach of Contract—NSA

22. Like the noncompetition clause in the Purchase Agreement, the provisions of the NSA are also unenforceable because: (1) they are not supported by sufficient consideration; and (2) they impose a greater restraint than is necessary to protect the goodwill or other business interest of "The Allied Group of Companies" as vaguely defined in the NSA. Indeed, Paulsen's employer was Allied Management, Inc. which neither sells goods nor services. Paulsen Declaration, ¶2.

23. In addition to the requirements that a covenant not to compete must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, the covenant must also be "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." TEX. BUS. & COM. CODE ANN. § 15.50(a). There must be a contemporaneous exchange of consideration between the parties at the time the

"otherwise enforceable agreement" is executed for the promise not to be illusory. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 37 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "If anything in the classical law of contracts is clear, it is that past or future consideration is not good consideration. *Id.* Any exchange must be contemporaneous, because the promise and the consideration for that promise must serve as reciprocal conventional inducements. *Id.*

24. Here, the NSA provided that "[i]n consideration for Employee's post-employment obligations under this Agreement, the Company agrees that it will provide Employee with access to the Company's confidential and proprietary information and trade secrets." Paulsen Declaration, Exhibit A-3, p. 1. However, a *promise* to give confidential information is not sufficient. *TMC Worldwide*, 178 S.W.3d at 38 (emphasis in original). Accordingly, a promise to provide confidential information is illusory and cannot be the basis of an "otherwise enforceable agreement" unless (1) the employer promises to deliver confidential information to the employee and (2) the employer actually delivers the confidential information at or near the time the employee makes the promise to keep the information confidential. *Id*. In this case the NSA does not state that the Company is promising to deliver the confidential information, nor does it recite that the Company is providing the alleged confidential and proprietary information. This promise is illusory. Moreover, Allied Management Inc. admits it merely acts as an employer. Complaint, ¶11. Therefore, the NSA lacks consideration and is unenforceable as a matter of law.

25. Additionally, the NSA imposes a greater restraint than is necessary to protect the goodwill or other business interest of "The Allied Group of Companies."

26. The NSA contains a defined term "Restricted Area" which however, the reach of the restrictive covenant found at section 3b does not limit itself to the "Restricted Area." A plain reading of the NSA's restrictive covenant contains no restriction as to geographical area. *See* Paulsen Declaration, Exhibit A-3, pp. 6-7. The "absence of a geographical restriction will generally render a covenant not to compete unreasonable." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d at 212. As such, the claim for breach of the noncompetition provision in the NSA fails because the noncompetition provision is unenforceable as a matter of law.

27. As to the scope of the activity restrained, the NSA provided:

> In consideration for the promises made by Company herein, Employee agrees that for eighteen (18) months from the separation of his employment with the Company, whatever the reason for the end of employment, that he shall not directly or indirectly, in any capacity, solicit or otherwise provide any services to (for the purpose of providing Competing Business) any customer, vendor supplier, sourcing partner or agent, with whom the Employee had business dealings on behalf of the Company during the two (2) year period prior to Employee's separation from the Company or about whom the Employee had access to Confidential Information.

*See* Exhibit A-3, ¶1.

"Competing Business" is defined as:

> The design, manufacture, selling, or promoting of products sold by the Company during the term of Employee's employment, including, but not limited to, the manufacture and master distribution of: carbon steel fittings and flanges; stainless steel and special alloy pipe; chrome-moly fittings and flanges; high-yield, high-pressure flanges, high yield, large OD/heavy wall butt-weld fittings; stainless, carbon, and special alloy gate, glove, check and ball valves; and/or other tubing, fittings, flanges, pipe, and valves used in

>oil and gas production facilities, oil and gas pipelines, shipyards, chemical and nuclear installations, and commercial mechanical markets.

*See* Exhibit A-3, ¶3(a)(ii).

28. First, the Company is a combination of affiliated entities which did not employ Paulsen, specifically "The Allied Group of Companies, including, but not limited to, all it [sic] **related** and **affiliated** companies (Allied Fitting, Warren Alloy, Allied Chrome, and Allied International)(collectively the "Company."" Exhibit A-3, p. 1 (emphasis added). This list leaves determining what is competitive ultimately undefined and unlimited in scope, including which entities are "related" or "affiliated." For example, the Declaration of Jeremy Blachman (attached to the Original Complaint as Exhibit A) states that Allied Pipe Holdings, LLC is wholly owned by Lilco LLC which in turn is owned by Marc and Judy Herzstein "and two trusts in which the Herzsteins are executors." By its plain language, the NSA purports to restrict Paulsen from competing with Lilco LLC and these trusts but without explaining what it is that they even do. Further, the NSA would restrict Paulsen from competing with other unidentified entities, including Lilco LLC or those trusts, or the Herzteins, may own or control either now or in the future. *See also,* judicial admission in Complaint, ¶10: "The Company also has manufacturing and distribution affiliates and sales offices in Canada, China, Italy, France and the United Kingdom."

29. Second, the restriction extends to any entity "about" whom the Employee had access to Confidential Information. By its own language the NSA therefore purports to restrict Paulsen from soliciting entities with which he had had no dealings. Under

Texas law, covenants not to compete that "extend[ ] to clients with whom the employee had no dealings during [her] employment" or amount to industry-wide exclusions are "overbroad and unreasonable." *D'Onofrio*, 888 F.3d at 211; *see also John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (a restraint on client solicitation is overbroad and unreasonable when it extends to clients with whom the employee had no dealings). The restriction fails for overbreadth.

30. Third, like the noncompetition provision in the Purchase Agreement, the scope of "Competing Business" the NSA purports to restrain imposes a greater restraint than is necessary to protect the goodwill or other business interest of "The Allied Group of Companies." The list of restrained activity amounts to an industrywide exclusion from oil and gas production facilities, oil and gas pipelines, shipyards, chemical and nuclear installations. Under the plain language of the NSA, Paulsen could not sweep the floors of a competitor. *Sentinel Integrity Sols., Inc.*, 414 S.W.3d at 926. Nor could Paulsen volunteer at a competitor's charity golf tournament is unenforceable as written. *Forum US, Inc.*, 2020 WL 4331442 at *8.

31. Because this provision is unenforceable as a matter of law, there is no genuine issue as to any material fact and Mr. Paulsen is entitled to judgment as a matter of law that Allied Management, Inc. take nothing on its breach of the NSA claim.

### IV. Plaintiffs are Not Signatories to the NSA

32. Neither Plaintiff is a signatory to the NSA. Neither Plaintiff is named or even mentioned in the NSA. The NSA does not list either Plaintiff being part of the "The Allied Group of Companies." Exhibit A-3, p. 1.

33. Also, the language of the NSA makes it clear that it covers a "customer, vendor, supplier, sourcing partner or agent, with whom the Employee had business dealings on behalf of the Company during the two (2) year period prior to Employee's separation from Company or about whom the Employee had access to Confidential Information. At no point in the Original Complaint do the Plaintiffs actually allege that the company Paulsen allegedly solicited was a person "with whom the Employee had business dealings on behalf of the Company during the two (2) year period prior to Employee's separation from Company." Nor is a violation of the noncompetition provision of the Purchase Agreement actually alleged, because neither of the entities mentioned in the Complaint (Bri Steel and Interpipe) is claimed to be "engaged in competition." Indeed, nothing is said of Bri Steel, and all that is alleged is that Interpipe is "a vendor of Plaintiffs," not a competitor. Cmpl. ¶ 25.

V.    **Texas Noncompete Act Preempts Award of Attorney's Fees**

34. Finally, Plaintiffs purport to seek attorney fees. However, "the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code [and the Texas Noncompete Act] are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures **and remedies in an action to enforce a covenant not to compete under common law or otherwise**." TEX. BUS. & COM. CODE § 15.52 (emphasis added). The Texas Noncompete Act does not provide for an award of attorney's fees for a plaintiff seeking to enforce a noncompetition provision and preempts an award under any other theory. *D'Onofrio*, 888 F.3d at 219;

citing *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 594 (Tex. App.—San Antonio 2003, pet. denied). That claim must be denied.

## IV.     PRAYER

Defendant Edwin F. Paulsen requests that the Court dismiss all claims against him with prejudice and render judgment that Plaintiffs taken nothing from him. Defendant Edwin F. Paulsen also prays that the Court grant him such other and further relief to which he may be entitled in law or equity.

          Respectfully Submitted,

          Hughes Watters Askanase, LLP

          *//s// C. Ed Harrell*
          State Bar No. 09042500
          1201 Louisiana, 28th Fl
          Houston, Texas 77002
          Telephone: (713) 759-0818
          Facsimile: (713) 759-6834
          eharrell@hwa.com

          **ATTORNEY FOR DEFENDANT**
          **EDWIN F. PAULSEN**

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that the foregoing Motion was served on opposing counsel pursuant to the Federal Rules of Civil Procedure, this 25th day of October, 2021:

Mark J. Levine
Weycer, Kaplan, Pulaski & Zuber, P.C.
24 Greenway Plaza, Ste. 2050
Houston, Texas 77046
*Via electronic service – mlevine@wkpz.com*

          ____*//s// C. Ed Harrell*_____
          C. Ed Harrell